UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **NICHOLAS DINICOLA,**<br><br>                    Plaintiff,<br>-vs-<br><br>**SUNRISE CREDIT SERVICES INC.,**<br><br>                    Defendant. | *Civil Action No.* _____ |

### COMPLAINT & DEMAND FOR JURY TRIAL

#### INTRODUCTION

1. Plaintiff DiNicola brings this action for actual and statutory damages resulting from the Defendant's various violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (hereinafter "FDCPA"), a law that prohibits debt collectors from using abusive, deceptive, and unfair practices in an attempt to collect a debt.

#### JURISDICTION & VENUE

2. This honorable Court possesses jurisdiction over this matter pursuant to 15 U.S.C. §1692k(d) and 28 U.S.C. § 1331.

3. Additionally, venue in this district arises pursuant to 28 U.S.C. §1391(b) since the Defendant transacts business here and the conduct complained of occurred here.

#### PARTIES

4. Plaintiff DiNicola is a natural person residing in the County of Monroe, State of New York, and is a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

5. Defendant Sunrise Credit Services, Inc., (hereinafter "SCS") is a domestic business corporation organized and existing under the laws of the State of New York and is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

6. Any and all acts of the Defendant hereinafter alleged were performed by Defendant's employees, while under the scope of the Defendant's actual or apparent authority.

7. Any and all references to "Defendant" herein shall include the Defendant and/or an employee of the Defendant.

**FACTUAL ALLEGATIONS**

8. That Plaintiff DiNicola incurred and later defaulted on a credit card debt to HSBC. Said debt will hereinafter be referred to as "the subject debt."

9. The subject debt is a "debt" as that term is defined by 15 U.S.C. §1692a(5), as it arose out of a transaction in which money, services or property, which was the subject of the transaction, was primarily for personal, family and/or household purposes.

10. That following his default, Plaintiff DiNicola communicated with HSBC and a full settlement of the subject debt balance was reached in the amount of $135.24. ***See attached Exhibit A***.

11. That despite the fact that the aforementioned account was settled in full, the subject debt account was forwarded to SCS for collections.

12. That shortly thereafter, Defendant SCS began calling Plaintiff DiNicola's telephone and hanging up. These calls almost always originated from different telephone numbers, however Plaintiff knows that it was Defendant calling, as he would immediately return the unidentified telephone call (using the telephone appearing on his caller ID) and was connected to SCS each time.

13. That during the first telephone call shared with Defendant SCS, Plaintiff DiNicola disputed the subject debt, explaining that he had already settled the same with HSBC. Defendant SCS simply told Plaintiff DiNicola that he was wrong because the fact that SCS had the account meant that he didn't pay his bill. At that time, Mr. DiNicola requested that documentation regarding the purported debt be sent to his address and upon being informed of Defendant's intention to do so, ended the call.

14. That at no time during the exchange described above did Defendant SCS inform Plaintiff that SCS was a debt collector attempting to collect a debt and that any information obtained would be used for that purpose.

15. That they very next day, Defendant SCS again called Plaintiff's telephone and immediately hung up. Upon calling the telephone number back, Plaintiff spoke with a male representative named "Tony." At that time, "Tony" declared that Mr. DiNicola was being sued for the balance owed on the HSBC credit card. When Plaintiff DiNicola attempted to dispute the debt and questioned the veracity of Defendant's statement, "Tony" stated that he couldn't "access" the file because it was "sent to the legal department" for a lawsuit against him. When Plaintiff again attempted to refute Defendant's claim by explaining that the previous SCS representative made no reference to legal action, "Tony" simply stated that he

did not know who Plaintiff had spoken with, but that SCS was in certainly in the process of suing Mr. DiNicola.

16. That as the aforementioned telephone conversation continued, Plaintiff requested information regarding the lawsuit being filed against him but was transferred to the "legal department" to discuss settlement of the debt. At that time, a female representative for SCS (who informed Mr. DiNicola that all calls were being recorded) provided Plaintiff with information regarding SCS's address, the original creditor, the balance in question, the account number, etc. Upon receipt of the aforementioned information, the call was ended.

17. That despite Defendant's repeated insistence, no legal action of any kind was being taken against Plaintiff DiNicola, nor did Defendant have the intention or authority to take legal action against him. Additionally, upon information and belief, Defendant SCS is not a law firm, nor do they have a "legal department."

18. That several days later, Plaintiff DiNicola again received a hang-up call and returned the telephone number appearing on his caller ID. Again he was connected to SCS and spoke with a female representative. Again Mr. DiNicola disputed the subject debt, explained that he settled the same with HSBC and inquired into "Tony's" representation that he was being sued. At that time, the female representative stated that she did not know of any lawsuit and the call was ended shortly thereafter.

19. That Defendant routinely failed to provide Plaintiff DiNicola with disclosures required pursuant to 15 U.S.C. 1692e(11).

20. That at no time during the events described above did Defendant SCS provide Plaintiff DiNicola with the written notice of the subject debt and his rights as a "consumer."

21. That as a result of Defendant's false, deceptive and unfair debt collection practices, Plaintiff Nicholas DiNicola became very worried, nervous, upset, frustrated, anxious, afraid and otherwise suffered from emotional distress.

## CAUSE OF ACTION

22. The aforementioned acts and omissions of the Defendant have violated the Fair Debt Collection Practices Act (15 U.S.C. §1692 et seq.) as follows:

23. Defendant violated 15 U.S.C. §1692d and 15 U.S.C. §1692d(2) by using language the natural consequence of which was to abuse the hearer, by:
    a. Telling Plaintiff DiNicola that he was wrong about having resolved the subject debt because the fact that SCS had the account meant that he didn't pay his bill;

    b. Declaring that Mr. DiNicola was being sued for the balance owed on the HSBC credit card;

    c. Stating that "Tony" couldn't "access" the file because it was "sent to the legal department" for a lawsuit against Plaintiff; and

    d. Stating that while "Tony" did not know who Plaintiff had spoken with the day earlier, he was certain that SCS was in the process of suing Mr. DiNicola.

24. Defendant violated 15 U.S.C. §1692d and 15 U.S.C. §1692d(5) by repeatedly causing Plaintiff's telephone to ring and then immediately hanging up with the intent to annoy, abuse and harass.

25. Defendant violated 15 U.S.C. §1696d and 15 U.S.C. §1692d(6) by repeatedly causing Plaintiff's telephone to ring and immediately hanging up – thereby failing to provide meaningful disclosure of the Defendant's identity.

26. Defendant violated 15 U.S.C. §1692e, 15 U.S.C. §1692e(2)(A), 15 U.S.C. §1692e(3), 15 U.S.C. §1692e(5) and 15 U.S.C. §1692e(10), by repeatedly using false, deceptive and/or misleading representations to convince Plaintiff DiNicola that he was being sued for the subject debt even though he disputed the same.

27. Defendant violated 15 U.S.C. §1692e and 15 U.S.C. §1692e(11) by repeatedly failing to disclose that Defendant was a debt collector attempting to collect a debt, and failing to disclose during the parties' initial communication that any information obtained would be used for the purpose of debt collection.

28. Defendant violated 15 U.S.C. §1692f and 15 U.S.C. §1692 f(1) by attempting to collect a debt not authorized by law or agreement, since the subject debt account had already been settled in full with HSBC previously.

29. Defendant violated 15 U.S.C. §1692g(a) by failing to provide Plaintiff DiNicola with a written notice of the subject debt and his rights as a "consumer" within five (5) days after the parties' initial communication.

30. Because of the Defendant's various aforementioned violations of the FDCPA, Plaintiff Nicholas DiNicola became very worried, nervous, upset, frustrated, anxious, afraid and otherwise suffered from emotional distress.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this honorable Court enter judgment against the Defendant for:

(a) Actual damages, pursuant to 15 U.S.C. §1692k(a)(1);

(b) Statutory damages, pursuant to 15 U.S.C. §1692k(a)(2)(A);

(c) Costs and disbursements of this action, together with reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3); *and*

(d) For any and all additional relief as this honorable Court may deem just and proper.

## JURY DEMAND

Please take notice that Plaintiff DiNicola demands a trial by jury in this action.

Date: February 25, 2011

/s/Frank J. Borgese
Frank J. Borgese, Esq.
Graham Law, P.C.
*Attorneys for the Plaintiff*
1207 Delaware Ave., Suite 202
Buffalo, New York 14209
fborgese@grahamlawpc.com
716.200.1520

# Exhibit A

# HSBC

PO Box 80053
Salinas, CA 93912-0053

NICHOLAS R DINICOLA
41 HUNTING SPG
ROCHESTER, NY 14624-4357

November 18, 2010



Re: Account ending in 2148
Account issued by HSBC Bank Nevada, N.A.

Dear NICHOLAS R DINICOLA:

This letter is to confirm that we have received your final settlement payment of $135.24. Once the funds clear and the proceeds are applied to your Account, your Account will be considered settled and closed. Additionally, it will be reported to the three major consumer reporting agencies (Trans Union, Experian, and Equifax) as "Account paid in full for less than the full balance."

Note that due to processing time, interest charges and fees will continue to accrue, according to the terms and conditions of your Cardmember Agreement and Disclosure Statement, up to 45 days after the final payment has been received. Any remaining balance on your Account may be reported to the Internal Revenue Service as a discharged debt.

If you have any questions, please contact one of our experienced representatives at 1-800-435-1415.

Sincerely,

HSBC Credit Card
Collections Department
HCSKYA/STLF001

HSBC Card Services Inc., an affiliate of HSBC Bank Nevada, N.A. (the issuer of this Account), provides administrative and processing services for this credit card or line of credit program.

7